**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No.  14-cv-03416-RM-CBS

WENDY ST. CHARLES,

      Plaintiff,

v.

SHERMAN & HOWARD L.L.C., a Delaware corporation, and
JAMES WEAR,

      Defendants.

---

**ORDER**

---

    This matter is before the Court on Defendant Sherman & Howard L.L.C.'s ("Sherman & Howard") motion to compel arbitration (ECF No. 19) and Defendant James Wear's ("Wear") motion to compel arbitration (ECF No. 18).  Both Defendants request that the Court stay the matter pending arbitration.  (ECF No. 19 at 9; ECF No. 18 at 8.)  Plaintiff Wendy St. Charles ("St. Charles") opposes Defendants' motions.  (ECF No. 24.)

    For the reasons stated below, the Court (1) GRANTS Sherman & Howard's motion to compel arbitration; (2) GRANTS, in part, Wear's motion to compel arbitration; and (3) ADMINSITRATIVELY CLOSES the matter subject to reopening for good cause pursuant to Local Civil Rule 41.2.

**I.    BACKGROUND**

    This is an employment discrimination suit brought by Plaintiff who was terminated from her employment with Sherman & Howard.  (ECF No. 1 ¶ 1.)  Plaintiff alleges that Sherman &

Howard discriminated against her and created a hostile work environment against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII").  (ECF No. 1 ¶¶ 163-67.)  Plaintiff alleges that Sherman & Howard retaliated against her in violation of Title VII for reporting Wear's sexually harassing conduct. (ECF No. 1 ¶¶ 168-73.)  Plaintiff alleges that Sherman & Howard wrongfully discharged her in violation of public policy.  (ECF No. 1 ¶¶ 183-88.)  Plaintiff alleges that Sherman & Howard and Wear negligently inflicted emotional distress upon her.  (ECF No. 1 ¶¶ 179-82.)  Plaintiff alleges that Sherman & Howard and Wear intentionally inflicted emotional distress upon her.  (ECF No. 1 ¶¶ 174-78.)  Plaintiff alleges that Wear tortiously interfered with Plaintiff's employment contract with Sherman & Howard.  (ECF No. 1 ¶¶ 189-94.)

Plaintiff's allegations stem from her employment with Sherman & Howard between April 2008 and 2014.  (ECF No. 1 ¶¶ 13-16, 21.)  Defendant Wear was an equity member of Sherman & Howard.  (ECF No. 1 ¶ 18.)  Plaintiff does not allege her specific employment status with Sherman & Howard (*see generally* ECF No. 1) but does not contest Defendants' characterization of her employment as a Sherman & Howard Counsel Member (*see* ECF No. 18 at 2; ECF No. 27-1 ¶ 2, Michael Yeonopolus Aff. ¶ 2; *see generally* ECF No. 24).

Plaintiff had an employment contract with Sherman & Howard.  (ECF No. 1 ¶ 190.)  An Amended and Restated Operating Agreement of Sherman & Howard effective January 1, 2011 (the "Operating Agreement") governed Plaintiff's employment.  (ECF No. 19-1 ¶ 4, Joseph J. Bronesky Aff. ¶ 4; ECF No. 19-2 at 6, Operating Agreement § 1.1; ECF No. 19-3, Signature Page.)  Operating Agreement Article 14 provides for a method of dispute resolution.  (ECF No. 19-2 at 30, Operating Agreement Art. 14.)  It states, in pertinent part, that:

> In the event a dispute of any kind arises in connection with this [Operating] Agreement, including any dispute concerning its construction, performance or breach, the parties to the dispute (who may be any combination of [Sherman & Howard] and any one or more of the Owners[1]) will attempt to resolve the dispute as set forth in 14.2 before proceeding to arbitration as provided in 14.3.

(ECF No. 19-2 at 30, Operating Agreement § 14.1.)

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Defendants move to compel arbitration of Plaintiff's claims based upon Operating Agreement Section 14.1.  (ECF No. 18; ECF No. 19.)

## II.   LEGAL STANDARDS

Section 4 of the FAA, in pertinent part, provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Section 3 of the FAA requires a court to stay actions involving matters referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

---

[1] The Operating Agreement defines "Owner" as "[a]ny person who is or was an owner of [Sherman & Howard], or of any predecessor or successor to it, including (as the context requires or permits) each Equity Member, Former Equity Member, Member, Former Member, Counsel Member, Former Counsel Member, former equity partner and former partner."  (ECF No. 19-2 at 9, Operating Agreement § 1.7.)

The FAA "manifests a 'liberal federal policy favoring arbitration.'" *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).   "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.*" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The Court approaches disputes over whether the parties have agreed to arbitrate by applying "a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (citation omitted); *see also Goodwin v. H.M. Brown  Assocs., Inc.*, Case No. 10-CV-01205-PAB-MEH, 2011 WL 820025, at *3 (D. Colo. Mar. 2, 2011) (collecting cases).   Under this approach, the moving party bears the initial burden of presenting evidence sufficient to demonstrate than an enforceable arbitration agreement exists.  *Stein*, 396 F. Supp. 2d at 1212.  If the moving party satisfies that burden, the burden then shifts to the party opposing arbitration, which must show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56."  *Id*. at 1213.  Finally, the Court must "look to state law principles of contract formation to [determine] whether an agreement to arbitrate has been reached." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997) (citations omitted).

## III.   ANALYSIS

### A.   The Court Has Jurisdiction to Review Arbitrability

The "question of arbitrability—whether a [contract] creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination.  Unless the

parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (quoting *AT&T Techs., Inc. v. Commc'ns. Workers*, 475 U.S. 643, 649 (1986)).  The "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g*, 126 F.3d at 1287 (citation omitted).  Parties may agree to submit questions or arbitrability to an arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citations omitted).  Such intent, however, must be based upon "clear and unmistakable" evidence.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In *Kaplan*, Justice Breyer described this standard as a type of "reverse presumption," that is one in favor of a judicial, rather than an arbitral, forum for this threshold determination.  *Id*. at 945.

The Operating Agreement, in pertinent part, provides:  "To the extent consistent with the provisions of this Article, the arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association [("AAA")] and in accordance with the Colorado Arbitration Act."  (ECF No. 19-2 at 30, Operating Agreement § 14.3(b).)  The Court recognizes that AAA Commercial Arbitration Rule 7(a) grants the arbitrator power to determine the extent of her or his jurisdiction.  Am. Arbitration Ass'n, Commercial Arbitration Rules and Mediation Procedures R. 7(a) (Oct. 1, 2013), available at www.adr.org/commercial (last visited April 20, 2015).  The Tenth Circuit Court of Appeals, unlike other Circuit Courts of Appeals, has held that a parties' arbitration clause which stated that it will be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" *Riley Mfg.*, 157 F.3d at 777 n.1, is not "clear and unmistakable" evidence that the parties agreed to have the question of

arbitrability determined by the arbitrator, *id*. at 780. *See Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). Because the Court is bound by Tenth Circuit precedent, the Court does not find persuasive Defendants' reliance upon *Pikes Peak Nephrology Assoc., P.C. v. Total Renal Care, Inc.*, Case No. 09-CV-00928-CMA-MEH, 2010 WL 1348326, at *6-7 (D. Colo. Mar. 30, 2010) for their arguments that the arbitrator is to determine the scope of the arbitrable issues. *See United States v. Spedalieri*, 910 F.2d 707, 709, 709 n.2 (10th Cir. 1990) (citations omitted).

### B. The Arbitration Clause is Broad as to Any Disputes Arising in Connection with the Operating Agreement[2]

"Before the party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid arbitration agreement exists between the parties and *whether the specific dispute falls within the scope of that agreement*." *Houlihan v. Offerman & Co. Inc.*, 31 F.3d 692, 694-95 (8th Cir. 1994) (emphasis added and citation omitted); *see also Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515-16 (10th Cir. 1995). The language of the contract defines the scope of disputes subject to arbitration. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citation omitted).

As a preliminary matter, the Court must determine whether the parties' arbitration clause is broad or narrow. The Tenth Circuit has consistently held that the phrases "arising out of or relating to" mean that the parties intended their arbitration agreement to be construed broadly. *See, e.g.*, *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a

---

[2] The Court does not address whether claims solely against Wear, in the absence of Sherman & Howard's being a party to this suit, would be subject to arbitration.

collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (internal quotation and citation omitted).  "[A] collateral issue . . . is somehow connected to the main agreement that contains the arbitration clause." *Burlington N. & Santa Fe Ry. Co. v. Public Serv. Co. of Okla.*, 636 F.3d 562, 569 (10th Cir. 2010) (internal quotation and citation omitted).   "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* at 570 (quoting *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009)).  Where the arbitration clause is broad, however, an express provision excluding a specific dispute, or the "most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration in arbitration." *AT&T Techs.*, 475 U.S. at 650; *accord Cummings*, 404 F.3d at 1261 (quotation omitted).  To determine the breadth of an arbitration clause, the Court asks whether "the parties clearly manifested an intent to narrowly limit arbitration to specific disputes." *Chelsea Family Pharmacy*, 567 F.3d at 1196.

The Tenth Circuit has defined the concept of whether a dispute arises from a contract as follows:  "a dispute must either involve rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect." *Riley Mfg. Co.*, 157 F.3d at 781 (quoting *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1024-25 (10th Cir. 1990)).

In this matter, the arbitration clause (ECF No. 19-2 at 30, Operating Agreement § 14.1) is broad. *See Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (holding an arbitration clause is broad when it contains the language providing for arbitration of issues "in connection with th[e] [a]greement"). In *Brown*, the Tenth Circuit held the arbitration clause broad "as it cover[ed] not only those issues arising under the employment contract, but even those issues with any connection to the contract." *Id*. Similarly, in this matter the parties used broad language which provides that disputes which arise "in connection with [the Operating] Agreement" must be arbitrated. (ECF No. 19-2 at 30, Operating Agreement § 14.1.) It is not necessary that Plaintiff allege a specific Operating Agreement provision for the dispute to fall within the ambit of the arbitration provision. *See Brown*, 220 F.3d at 1184. The parties did not clearly manifest an intent to narrowly limit arbitration to specific Operating Agreement provisions.

Because Plaintiff's claims "aris[e] in connection with [the Operating] Agreement," the Court must compel arbitration. The claims or "disputes" involve events which occurred at least in part while the Operating Agreement was in effect.[3] Plaintiff's claims arise as a result of her employment relationship with Sherman & Howard. (ECF No. 1 ¶ 1.) Absent Plaintiff's employment relationship, Plaintiff would have no claims in this matter.[4] Plaintiff's employment relationship with Sherman & Howard was governed by the Operating Agreement. (ECF No. 19-1 ¶ 4, Joseph J. Bronesky Aff. ¶ 4; ECF No. 19-2 at 6, Operating Agreement § 1.1; ECF No. 19-3, Signature Page.) Plaintiff fails to rebut this material fact. (*See generally* ECF No. 24.) Any

---

[3] Plaintiff makes no argument that her claims fall outside the effective date of the Operating Agreement. (*See generally* ECF No. 24.)
[4] By this ruling, the Court does not imply that a Sherman & Howard prospective employee's Title VII claims or other claims would also be subject to arbitration.

dispute Plaintiff has in this matter is a result of the employment relationship she has which is "in connection" with the Operating Agreement.

Plaintiff's comparison (ECF No. 24 at 7) of her claims to the hypothetical posed by the Tenth Circuit in *Coors Brewing*, 51 F.3d at 1516, fails.  In *Coors Brewing*, the Tenth Circuit posited that

> if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract.  In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship.

*Id*. at 1516.  This case is distinguishable from the hypothetical posed in *Coors Brewing*.  But for the Operating Agreement which establishes the Plaintiff's employment relationship to Defendants, Sherman & Howard and Wear could not have engaged in acts which allegedly violated Plaintiff's rights.  The Operating Agreement sets forth Plaintiff's employment obligations and certain permitted actions by Sherman & Howard.  (ECF No. 19-2 at 10, 14, Operating Agreement §§ 4.1, 4.2, 2.3, 2.6, 4.4.)  Thus, it is not simply fortuitous that the parties had a contractual relationship.  Rather, the Operating Agreement established the "connection" through which actions allegedly in violation of Plaintiff's rights could occur.  *See Williams v. Imhoff*, 203 F.3d 758, 766-67 (10th Cir. 2000) (holding that, in view of the plaintiffs' allegations as a whole which arose out of their employment terminations, "defendants would not have been able to carry out their alleged scheme").

The Court does not find persuasive Plaintiff's reliance upon *Wagner v. Discover Bank*, Case No. 12-CV-02786-MSK-BNB, 2014 WL 128372, at *5 (D. Colo. Jan. 10, 2014).  (ECF No. 24 at 10-12.)  This is another District Court of Colorado case which is respectfully of limited

precedential value.  Further, other district courts have disagreed with *Wagner's* holding.  *See*

*Delgado v. Progress Fin. Co.*, Case No. 14-CV-00033-LJO-MJS, 2014 WL 1756282, at *3-4

(E.D. Cal. May 1, 2014) (slip copy) (identifying cases).

### C.    The Arbitration Clause Is Enforceable, In Part

Plaintiff argues that the Operating Agreement's arbitration provision is unenforceable

because it undermines Plaintiff's statutory rights and involves prohibitive associated costs.  (ECF

No. 24 at 12-15.)

### 1.    The Operating Agreement, In Part, Does Not Undermine Plaintiff's Statutory Rights

#### a.    *Cost Splitting*

The Operating Agreement, in pertinent part, provides that

The cost of any arbitration, including the fees and expenses of the arbitrator, will be shared by the parties to the dispute in equal proportions.  Each party to the dispute will bear his, her or its own costs, expenses and attorney's fees.

(ECF No. 19-2 at 30, Operating Agreement § 14.3(c).)

The Operating Agreement contains a severability clause which provides that

Wherever possible, each provision of [the Operating] Agreement will be interpreted in such manner as to be effective and valid under applicable law.  However, if for any reason any one or more of the provisions of [the Operating] Agreement are held to be invalid, illegal or unenforceable in any respect, such action will not affect any other provision of [the Operating] Agreement.  In such event, [the Operating] Agreement will be construed as if such invalid, illegal or unenforceable provision had never been contained in it.

(ECF No. 19-2 at 33, Operating Agreement § 15.14.)

Title VII provides for fee shifting to a prevailing plaintiff as part of the costs.

*Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422-24 (1978) (citing 42 U.S.C. §

2000e-5(k)).  The Operating Agreement's provision regarding costs and fees for the arbitrator

constitutes a prospective waiver of Plaintiff's right to pursue statutory remedies, *see Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (citation omitted) and thus defeats Title VII's remedial structure with regarding to the costs of arbitration, including the arbitrator's fees and expenses and a prevailing plaintiff's costs, expenses, and attorney's fees.  Such a provision may be void as against public policy.  *Gourley v. Yellow Transp., LLC*, 178 F. Supp. 2d 1196, 1204 (D. Colo. 2001).  When a contract contains a savings clause, as the Operating Agreement does (ECF No. 19-2 at 33, Operating Agreement § 15.14), the Court may void the fee-splitting provision and otherwise enforce the arbitration agreement.  *See, e.g, Fuller v. Pep Boys—Manny, Moe & Jack of Delaware, Inc.*, 88 F. Supp. 2d 1158, 1162 (D. Colo. 2000).  The Court voids the fee-splitting and costs provision in its entirety.[5]  (ECF No. 19-2 at 30, Operating Agreement § 14.3(c).)

Because the Operating Agreement's provision regarding costs and fees (ECF No. 19-2 at 33, Operating Agreement § 15.14) does not "permeate the complete contract to such an extent as to affect its enforceability entirely," *N.L.R.B. v. Tulsa Sheet Metal Works, Inc.*, 367 F.2d 55, 59 (10th Cir. 1966) (citation omitted), the remaining provisions are enforceable.

b.   *Discovery*

Plaintiff argues that the AAA's Commercial Arbitration Rules undermine Plaintiff's statutory rights by limiting her right to discovery.  (ECF No. 24 at 13.)  The Court concedes that

---

[5] Because the Court voids the fee-splitting and costs provision in its entirety, the Court does not address Sherman & Howard's argument that Plaintiff has failed to carry her burden that the costs of arbitration are prohibitive.  (ECF No. 27 at 8-11.)  The Court finds suspect Sherman & Howard's argument that the "arbitrator has the power to invoke the severability clause of the Operating Agreement and disregard the fee-splitting provision in Article 14.3(c) for [Plaintiff's Title VII] claims."  *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (holding that in the context of challenging an arbitration award arising from a collective bargaining agreement, "an arbitrator is confined to interpretation and application of the [parties'] agreement; he does not sit to dispense his own brand of industrial justice . . . [and] his award is legitimate only so long as it draws its essence from the . . . agreement").  The Court finds such argument suspect because the arbitrator would have to ignore a provision in the parties' Operating Agreement to reach the result Sherman & Howard proposes.

the discovery procedures provided for by AAA's Commercial Arbitration Rules may not be as extensive as those provided by the Federal Rules of Civil Procedure but a party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  Plaintiff has failed to show that AAA's Commercial Arbitration Rules *prohibit* certain discovery processes, including, but not limited to, depositions, document production, information request, and subpoenas.  (*See generally* ECF No. 24.)  For these reasons, the Court does not find arbitration of Plaintiff's claims to contravene statutory protections.  *See Gilmer*, 500 U.S. at 31 (holding that an age discrimination claim can proceed to arbitration under the requirements in a securities registration application despite not having the same discovery procedures); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 82-83 (D.C. Cir. 2005) (holding that "[t]he relative silence of the commercial rules on the details of available discovery or other procedural questions cannot alone invalidate the [arbitration] agreement" (citation omitted).

**D.     The Court Administratively Closes the Matter**

Under Section 3 of the FAA, a "court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Williams*, 203 F.3d at 764 (citation omitted).  Accordingly, a stay is appropriate in this matter. The Tenth Circuit, however, has construed an administrative closure to be the practical equivalent of a stay.  *See Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987).  Therefore, pursuant to Local Civil Rule 41.2, the Court administratively closes the matter subject to reopening for good cause.

**E.      Defendant Wear Is Not Entitled to His Attorney's Fees and Costs**

"[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment*, 434 U.S. at 421.  Without addressing the merits of Wear's argument, because the Court administratively closes the matter, Wear is not the "prevailing" party.

**IV.      CONCLUSION**

Based on the foregoing, the Court:

(1)      GRANTS Sherman & Howard's motion to compel arbitration (ECF No. 19);

(2)      GRANTS, in part, Wear's motion to compel arbitration (ECF No. 18), to wit the Court:

(i)      GRANTS the motion to compel arbitration to the extent it seeks to compel arbitration of Plaintiff's claims;

(ii)      DENIES the motion to compel arbitration to the extent Wear seeks to recover the costs of defending this action;

(3)      STRIKES the fee-splitting and costs provision in the Operating Agreement in its entirety (ECF No. 19-2 at 30, Operating Agreement § 14.3(c));

(4)      subject to an arbitrator's award on the underlying merits of this matter, ORDERS Sherman & Howard and Wear to jointly and severally bear all of the arbitrator's costs and expenses; and

(5)     ORDERS the Clerk of the Court to ADMINISTRATIVELY CLOSE the matter

subject to reopening for good cause pursuant to Local Civil Rule 41.2.

DATED this 24th day of April, 2015.          BY THE COURT:

Raymond P. Moore
United States District Court Judge